UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MMMMM DP, LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:20-cv-00867-SEP |
| ) | |
| THE CINCINNATI INSURANCE CO., et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Dismiss. Doc. [11]. The Motion is fully briefed. For the reasons set forth below, the Motion will be granted.

### FACTS AND BACKGROUND[1]

This is a declaratory judgment action filed by MMMMM DP, LLC, MMMMM DP3, and Via Vina Enoteca (collectively "Del Pietro Restaurants") against The Cincinnati Insurance Company, The Cincinnati Casualty Company, The Cincinnati Indemnity Company, and Cincinnati Financial Corporation.[2] The Del Pietro Restaurants are a group of restaurants operating in St. Louis County.[3] On September 25, 2018, Plaintiffs purchased an "all risk" insurance policy (the "Policy") from Defendants[4] that covered the Insured Premises. Doc. [8] ¶ 10. Because of the uncontrolled spread of the COVID-19 virus, in March 2020 St. Louis

---

[1] The facts contained herein are taken from the allegations set out in Plaintiffs' Petition. Doc. [8]. The Court assumes their truth for the purpose of this Memorandum and Order. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

[2] Defendants The Cincinnati Insurance Company, The Cincinnati Casualty Company, The Cincinnati Indemnity Company, and Cincinnati Financial Corporation will be referred to collectively as "Cincinnati Insurance."

[3] The restaurant locations are referred to collectively as the "Insured Premises."

[4] Plaintiffs entered into an insurance contract with only The Cincinnati Insurance Company. *See* Doc. [8] at 22. Defendants contend that the "remaining Cincinnati entities are separate entities that have no relationship, contractual or otherwise, with Plaintiffs." Doc. [12] at 3 n.3

1

County issued several orders ("County Orders") restricting the operations of bars and restaurants, including Plaintiffs' restaurants.

In April 2020, Plaintiffs made a claim for their lost business income and extra expenses caused by the forced suspension of operations and the spread of the virus, but Defendants denied the claim. *Id.* ¶¶ 28-29. Plaintiffs filed this action under the Missouri Declaratory Judgment Act in the Circuit Court of St. Louis County, seeking a declaration that the Policy covers their loss of business income from complying with the County Orders and the uncontrolled spread of COVID-19. Doc. [8] at 10.[5] Defendants then removed this action to federal court on June 29, 2020. Doc. [1]. Defendants alleged that this Court has diversity jurisdiction because Plaintiffs are Missouri citizens, Defendants are Ohio citizens, the Missouri defendants were fraudulently joined, and the amount in controversy exceeds $75,000. *Id.* ¶¶ 6-13, 16-17. On a motion to remand, the Court agreed with Defendants and ordered that the Missouri defendants were dismissed. Doc. [27]. Having found that it has subject matter jurisdiction, the Court now considers Defendants' Motion to Dismiss.

## LEGAL STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the Court assumes all of a complaint's factual allegations to be true and construes all reasonable inferences in favor of the nonmoving party. *See Neitzke,* 490 U.S. at 326-27.

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Specifically, the complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.,* 865 F.3d 1054, 1057 (8th Cir. 2017) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). The Court "need not accept as true plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d

---

[5] References to the Petition and associated exhibits (Doc. [8]) use the page numbers assigned by the Court's electronic filing system, not the pagination provided by Plaintiffs.

714, 717 (8th Cir. 2019). The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly,* 550 U.S. at 556.

## DISCUSSION

Plaintiffs seek coverage under multiple provisions of the Policy. First, they claim coverage under the Business Income and Extra Expense provision, Sections A(5)(b)(1) and (2), which states, in relevant part:

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property as a "premises" caused by or resulting from any Covered Cause of Loss. . . .

Doc. [8] at 68. Second, Plaintiffs allege coverage under Section A(5)(b)(3)—the Civil Authority provision—which, according to Plaintiffs, covers

> actual loss of business income and necessary extra expenses incurred by action of civil authority where (1) a *covered loss* (which includes viruses and pandemics) causes damage to property other than the Insured Premises, (2) access to the Insured Premises is prohibited by civil authority as a result of the order, (3) access to the area surrounding the damaged property is prohibited by civil authority as a result of the damage, and (4) such action of civil authority is in response to dangerous physical conditions resulting from the damage or continuation of the *covered loss that caused the damage*.

*Id.* ¶ 14 (emphasis added); *see id.* at 69. Each provision requires the loss to be a "Covered Cause of Loss," which the Policy defines as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." *Id.* at 55; *see also* Doc. [28] at 2. "Loss" is defined as "accidental physical loss or accidental physical damage." *Id.* at 88.

Because this Court's jurisdiction is based on diversity of citizenship, "state law controls the interpretation of the Policy." *DeAtley v. Mut. of Omaha Ins.*, 701 F.3d 836, 838 (8th Cir. 2012). The parties agree that Missouri law applies. *See* Docs. [12] at 8; [28] at 5. Under Missouri law, the interpretation of an insurance policy is a question of law. *See Schmitz v. Great Am. Assurance Co.*, 337 S.W.3d 700, 705 (Mo. banc 2011); *Seoul Taco Holdings, LLC v. The Cincinnati Ins. Co.*, 2021 WL 1889866, at *4 (E.D. Mo. May 11, 2021). "To determine the intent of the parties, the language in the contract is to be read according to its plain and ordinary

meaning." *Lafollette v. Liberty Mut. Fire Ins. Co.*, 139 F. Supp. 3d 1017, 1021 (W.D. Mo. 2015) (citing *Mendota Ins. Co. v. Lawson*, 456 S.W.3d 898, 903 (Mo. Ct. App. 2015)); *see also Westchester Surplus Lines Ins. Co. v. Interstate Underground Warehouse & Storage, Inc.*, 946 F.3d 1008, 1010 (8th Cir. 2020). The insured, here Del Pietro Restaurants, bears the burden of establishing coverage under the Policy. *See Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 187 (Mo. Ct. App 2012).

The parties agree that to recover under the Policy, Plaintiffs must demonstrate that the COVID-19 virus caused direct "physical loss" or "physical damage" to the insured properties. Doc. [8] at 88; *see* Docs.[28] at 2-3; [30] at 1. They disagree about whether Plaintiffs have done so. In their Motion to Dismiss, Defendants argue that the presence of the virus does not constitute direct physical loss because there was no physical alteration of Plaintiffs' insured properties. Doc. [12] at 8. Plaintiffs counter that there was a direct physical loss within the meaning of the Policy because the "COVID-19 virus is a physical substance that contaminated the Insured Premises[,] causing a loss of use of that property." Doc. [28] at 6. Thus, Plaintiffs argue, they have alleged a covered loss under both the Business Income and Extra Expense provision and the Civil Authority provision. In support, Plaintiffs primarily rely on *Studio 417 v. Cincinnati Ins. Co.*,[6] in which the court held, based on allegations almost identical to those in Plaintiffs' Complaint, that the plaintiff adequately alleged direct physical loss based on the plain and ordinary meaning of "direct" and "physical." 478 F. Supp. 3d 794, 800 (W.D. Mo. 2020); *see* Doc. [28] at 6-7.

*Studio 417* is an outlier. Defendants offer numerous cases, in Missouri and across the nation, in which courts have denied coverage under similar policies because the COVID-19 virus does not cause physical loss or damage to property. Under Missouri law, direct physical loss or damage requires physical alteration of property. *See Zwillo V, Corp. v. Lexington Ins. Co.*, No. 4:20-00339-CV-RK, 2020 WL 7137110, at *4 (W.D. Mo. Dec. 2, 2020) ("'[D]irect physical loss of or damage to property' requires physical alteration of property, or, put another way, a tangible impact that physically alters property."). Many courts analyzing similar or identical policy language in the context of COVID-19 insurance disputes have emphasized this requirement.

---

[6] Plaintiffs also reference two other Western District of Missouri cases decided by the same Judge. *See Blue Springs Dental Care, LLC v. Owners Ins.*, 488 F. Supp. 3d 867 (W.D. Mo. 2020); *K.C. Hopps, Ltd. v. The Cincinnati Ins. Co.*, No. 20-cv-00437-SRB, 2020 WL 6483108 (W.D. Mo. 2020).

4

*See, e.g.*, *Robert E. Levy, D.M.D., LLC v. Hartford Fin. Servs. Grp. Inc.*, 2021 WL 598818, at *8 (E.D. Mo. Feb. 16, 2021) ("'[D]irect physical loss' requires an actual physical event affecting the property and not mere loss of use."). Plaintiffs do not allege any physical alteration of the property. Rather, they allege that the virus—a physical substance—caused a loss of use of the property, which they contend is sufficient to demonstrate a direct physical loss or damage. Doc. [28] at 6. But that interpretation would effectively remove the "physical" requirement and permit recovery based on "loss of use," which is not a Covered Cause of Loss. *See BBMS, LLC v. Cont'l Cas. Co.*, No. 20-0353-CV-BP, 2020 WL 7260035, at *3 ("A survey of cases, both from Missouri and elsewhere, confirms that the phrase ['direct physical loss'] requires some physical event or force on, in or affecting the property in question and not mere 'loss of use.' Ruling otherwise would render the word 'physical' a nullity."); *Seoul Taco*, 2021 WL 1889866, at *6 (holding that a "'loss of use' of property" from the COVID-19 virus' contamination of property is "insufficient" for purposes of a "physical loss" provision); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 491 F. Supp. 3d 455, 456 (S.D. Iowa 2020) ("[Plaintiff] does not allege any such 'physical' or 'accidental' loss, but instead contends its loss was caused by the COVID-19 coronavirus and the government actions to suspend temporarily non-emergency dental procedures. Recent [c]ases cited by Cincinnati [Insurance] have held that virus-related closures of business do not amount to direct loss to property covered by the Cincinnati policy of insurance.");[7] *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, No. 20-CV-221-JAR-GEB, 2020 WL 7078735, at *7 (D. Kan. Dec. 3, 2020) ("The presence of the words 'direct' and 'physical' limit the words 'loss' and 'damage' and unambiguously require that the loss be directly tied to a material alteration to the property itself, or an intrusion onto the property.").

To the extent Plaintiffs allege the presence of the COVID-19 virus at the Insured Premises, rather than a general spread of the virus in the community, they still fail to properly allege direct physical loss or damage for the same reason: The virus does not physically alter property. *See* Doc. [8] ¶ 24 (alleging the "general spread of the virus in the community, including in the Insured Premises"). Many courts agree. *See, e.g.*, *Zwillo*, 2020 WL 7137110, at *6 ("Whether the complaint is couched in terms of COVID-19's presence on the premises or of loss of use of premises due to stay-at-home orders (or the virus itself), Plaintiff has failed to state

---

[7] This case is currently awaiting decision by the Eighth Circuit. *Oral Surgeons PC v. The Cincinnati Ins. Co.*, No. 20-3211 (8th Cir. argued April 14, 2021).

a claim upon which relief may be granted because the policy does not cover the alleged claim."); *Seoul Taco*, 2021 WL 1889866, at *6 ("Plaintiffs' allegation that the COVID-19 virus was on the premises or that there was a person with COVID-19 on the premises is insufficient to support a claim of physical loss or damage under the Policy."); *Bend Hotel Dev. Co., LLC v. Cincinnati Ins. Co.*, No. 20 C 4636, 2021 WL 271294, at *3 (N.D. Ill. Jan. 27, 2021) ("[E]ven if plaintiff had alleged the presence of the coronavirus on the premises, every court in this district that has interpreted similar policy provisions under Illinois law has concluded that the virus does not cause 'direct physical loss or damage' to property."). Thus, Plaintiffs have failed to allege a coverable physical loss and are not entitled to recover under either alleged provisions of the Policy.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. [11]) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Supplement (Doc. 34) is **DENIED as moot**.

An appropriate Order of Dismissal will accompany this Memorandum and Order.

Dated this 21st day of May, 2021.

*Sarah E. Pitlyk*
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE